# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One LG Stylo 4 Cellular Telephone<br>SIM Number: 8901260155772290308<br>IMEI: 355931092329991 | )<br>)<br>)  Case No.<br>)<br>)          18MJ6089<br>) |

FILED
NOV 3 0 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                   DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
One LG Stylo 4 Cellular Telephone
SIM Number: 8901260155772290308           SEE ATTACHMENT A

located in the ____SOUTHERN____ District of ____CALIFORNIA____, there is now concealed *(identify the person or describe the property to be seized)*:
ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 952, 960, 963 | CONSPIRACY/IMPORTATION OF CONTROLLED SUBSTANCES |

The application is based on these facts:
AFFIDAVIT OF AGENT DUSTIN MATTIX

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dustin Mattix, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11-30-18__

_____
*Judge's signature*

City and state: San Diego, California          The Hon. Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Dustin Mattix, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device:

**One LG Stylo 4 Cellular Telephone**
SIM Number: 8901260155772290308
IMEI: 355931092329991

(hereinafter "**Target Device**") as further described in Attachment A, incorporated herein by reference.

2. Based on the information below, I have probable cause to believe that in the property in Attachment A, there is evidence and instrumentalities of illegal activity. Specifically, I have probable cause to believe that within the above property is evidence and instrumentalities of violations of Title 21, United States Code, Sections 952, 963 and 960; Conspiracy/Importation of Controlled Substances. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. The **Target Device** was seized from Virginia DE LA CRUZ ("DE LA CRUZ") at the San Ysidro, California Port-of-Entry ("SYS POE") on November 12, 2018. The **Target Device** is currently being stored as evidence in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") secure evidence storage facility located at the Special Agent in Charge, San Diego, California office.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all of the information known by me or other federal agents regarding this

investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") with the Department of Homeland Security ("DHS"). I have been so employed since May 2005. Prior to my employment with HSI, I served as a United States Border Patrol Agent from November 1996 until May 2005. I am a graduate of the Federal Law Enforcement Training Center ("FLETC"). At FLETC, I received training in criminal investigative techniques, including financial investigations, the execution of search warrants, and several other areas of law enforcement. Since becoming an agent, I have also received both formal and on-the-job training in the laws and regulations relating to money laundering, mail fraud, wire fraud, counterfeit financial instruments, bulk cash smuggling, bank fraud and various other narcotic and financial crimes. I have also directed, and participated in, numerous investigations that involved these crimes, participating in dozens of search warrants. I have arrested and interviewed numerous defendants associated with narcotic and financial crimes. As a federal agent, I am authorized to investigate violations of laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

6. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations. I have also worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those

suspected of trafficking in drugs. Additionally, I have participated in the execution of numerous search warrants. I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses and informants relative to the illegal trafficking of controlled substances.

7. Through these experiences, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports-of-entry.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics

3

and/or drug proceeds.

g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

## FACTS SUPPORTING PROBABLE CAUSE

9. On November 12, 2018, at about 5:10 p.m., DE LA CRUZ applied for admission into the United States from Mexico at the SYS POE. DE LA CRUZ was the driver and registered owner of a 2004 GMC Yukon. DE LA CRUZ had her two minor children inside the Yukon.

10. Customs and Border Protection Officer (CBPO) A. Cuevas was working vehicle primary lane #15 when DE LA CRUZ approached his booth for inspection. DE LA CRUZ presented her United States passport card (C17100701) with her name and photograph as proof of citizenship. DE LA CRUZ stated she was traveling home to San Fernando Valley and had nothing to declare for customs purposes. CBPO Cuevas inspected the cargo area of the vehicle and discovered plastic wrapped packages concealed within the void behind the driver's side rear quarter panel. CBPO Cuevas removed DE LA CRUZ from the vehicle and placed her in handcuffs. DE LA CRUZ and her daughters were escorted to the Security Office for further processing. CBPO R. Mattoon screened the vehicle with his Narcotics and Human detection dog who alerted to a trained odor emanating from within the rear cargo area of the vehicle. CBPO E. Figueroa screened the vehicle with the Z-PORTAL (X-Ray) Machine and detected anomalies within the rear quarter panels of the vehicle.

11. CBPO R. Eda searched the vehicle and extracted 16 packages concealed within the rear quarter panels of the Yukon with a net weight of 17.34 kilograms (38.22 pounds). A probe of a package revealed a crystal-like substance that field tested positive for methamphetamine.

12. DE LA CRUZ was arrested, and the **Target Device** was seized from DE LA CRUZ.

4

13. HSI SA E. Velazquez and SA F. Maroki advised DE LA CRUZ of her *Miranda* rights. After waiving her rights, DE LA CRUZ told agents that she believed she was smuggling Viagra.

14. DE LA CRUZ was arrested and charged with violations of California Health and Safety Codes 11378 (Possession of Methamphetamine for Sale), 11379 (Importation of a Methamphetamine), 11370.4(b) (Bail Enhancement) and two counts of Penal Code 273a (Child Endangerment).

15. On November 14, 2018, DE LA CRUZ was charged in a multi-count indictment of California Health and Safety Codes 11378 (Possession of Methamphetamine for Sale), 11379 (Importation of a Methamphetamine), 11370.4(b) (Bail Enhancement) and two counts of Penal Code 273a (Child Endangerment).

16. Drug smuggling activities require detailed and intricate planning to successfully evade detection by law enforcement. In my training and experience, this requires planning and coordination in the days, weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given those facts, I respectfully request permission to search the **Target Device** for data beginning March 1, 2018, up to and including November 12, 2018.

17. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device** contains evidence of violations of 21 U.S.C. §§ 952 and 960, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data:

    a. tending to identify attempts to import methamphetamine, cocaine or some other controlled substance from Mexico into the United States and to distribute controlled substances within the United States;

5

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the smuggling of methamphetamine, cocaine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine, cocaine or some other controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine, cocaine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## SEARCH METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data

stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that DE LA CRUZ used the **Target Device** to facilitate the offenses of Importation of a Controlled Substance and Conspiracy to Import a Controlled Substance. DE LA CRUZ likely used the **Target Device** to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, §§ 952 and 960.

22. Because the **Target Device** was promptly seized after the arrest of DE LA CRUZ, there is probable cause to believe that evidence of illegal activities committed by DE LA CRUZ continues to exist on the **Target Device**.

23. Therefore, I respectfully request that the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Dustin Mattix
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this  30   day of November, 2018.

THE HONORABLE NITA L. STORMES
United States Magistrate Judge

8

## **ATTACHMENT A**

One LG Stylo 4 Cellular Telephone
SIM Number: 89012601557722290308
IMEI: 355931092329991

currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations secure evidence storage facility located at the Deputy Special Agent in Charge, San Ysidro, California office.

## **ATTACHMENT B**

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period beginning March 1, 2018 up to and including November 12, 2018:

a. tending to indicate efforts to import methamphetamine, cocaine or other controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine or other controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine or other controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine or other controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**All believed to be evidence of violations of Title 21, United States Code, §§ 952, 960, and 963.**